UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

             v.                                                   Crim. No. 2:11-cr-156-4

Frank Santaw

**REPORT AND RECOMMENDATION**
(Docs. 275, 276)

      Frank Santaw, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him in the United States District Court for the District of Vermont.  (Doc. 275.)  Santaw was convicted following a plea of guilty to one count of engaging in a conspiracy to knowingly and intentionally manufacture five or more grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  He was sentenced by United States District Judge William K. Sessions III to a term of imprisonment of 78 months, to be followed by a four-year term of supervised release.

      Santaw contends that both prior to his guilty plea and at sentencing he was denied his right to effective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution.  (Doc. 275.)  The government opposes Santaw's motion.  In a separate motion, Santaw requests that the Court appoint him counsel.  (Doc. 276.)

For the reasons stated below, I conclude that Santaw has failed to establish that he was denied his right to effective assistance of counsel, and thus recommend that Santaw's § 2255 motion be DENIED.

## BACKGROUND

### I.   Initial Proceedings

On August 12, 2011, a criminal complaint was filed in this Court in which it was alleged that Santaw had knowingly and intentionally conspired with others to distribute methamphetamine, in violation of 21 U.S.C. § 846.  (Doc. 1.)  At Santaw's initial appearance, Attorney Richard Bothfeld was appointed to represent Santaw pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.  Santaw was ordered detained pending trial. Attorney Bothfeld sought review of that detention order, arguing that conditions of release could be set that would assure Santaw's continued appearance and the safety of the community.  (Doc. 45.)  Following a hearing, Judge Sessions denied the motion for release.  (Doc. 60.)

### II.   Indictment

On April 5, 2012, Santaw and 12 other individuals were indicted by the federal grand jury.  Santaw was charged in the Second Superseding Indictment with two counts of conspiracy to manufacture greater than five grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1).  (Doc. 46.)  The offense conduct involved the purchase and acquisition of pseudoephedrine from local and out-of-state pharmacies, and the clandestine manufacture of methamphetamine using that pseudoephedrine. Santaw's conduct included multiple purchases of pseudoephedrine and the production of

methamphetamine on several occasions in and around the small rural community of Island Pond, Vermont.

### III.  Plea Agreement

On June 15, 2012, a Plea Agreement was filed whereby Santaw agreed to plead guilty to Count Two of the Second Superseding Indictment, which charged him with engaging in a conspiracy to manufacture five or more grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).  (Doc. 108.)  In the Plea Agreement, Santaw acknowledged an understanding that by his plea he faced a mandatory minimum term of imprisonment of five years and a maximum term of 40 years.  (*Id.* at 1.)  In exchange for his guilty plea, the government agreed to recommend that Santaw be sentenced to a term of imprisonment at the low end of the applicable sentencing guideline range if the final offense level was determined to be 29 or above.  (*Id.* at 4.)  In addition, the government agreed to recommend that Santaw receive a three-level reduction for acceptance of responsibility under the Sentencing Guidelines ("Guidelines").  (*Id.*)  Santaw stated in the Agreement that he was satisfied with the advice and representation he had received from Attorney Bothfeld, that he had had a full opportunity to consult with Bothfeld, and that no threats or promises had been made to Santaw beyond the provisions of the Plea Agreement.  (*Id.* at 6.)

On July 2, 2012, Santaw appeared in the district court to enter his plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  At that hearing, Judge Sessions engaged in the complete colloquy required by Rule 11.  (Doc. 278.)  Santaw confirmed that he had had a full opportunity to consult with his attorney prior to entering into the

plea and that he was satisfied with the representation provided by Attorney Bothfeld. (*Id*. at 6.) Judge Sessions ascertained that Santaw understood he was pleading guilty to an offense that carried a five-year mandatory minimum term of imprisonment. Judge Sessions reviewed the Plea Agreement with Santaw in detail and explained the constitutional rights Santaw was waiving by his plea of guilty. Santaw acknowledged that no promises or representations had been made to induce him to plead guilty. (*Id.* at 12.) Judge Sessions then requested from the prosecutor a description of the factual basis for the plea. (*Id.* at 14.) Thereafter, Santaw acknowledged that the prosecutor's description of the offense conduct was accurate. (*Id*. at 16.) After conducting this inquiry, Judge Sessions concluded that there was a factual basis for the plea, and that it was made competently and voluntarily, free from any undue influence. (*Id.* at 17–18.) Judge Sessions further concluded that Santaw entered into the plea with a full understanding of the charges against him and the consequences thereof. (*Id.* at 18.) Accordingly, the plea was accepted by the Court.

**IV.     Sentencing**

In September 2012, a Presentence Investigation Report ("PSR") was prepared by the United States Probation Office. The PSR concluded that Santaw faced an imprisonment range under the Guidelines of 100 to 125 months based on an offense level of 27 and a criminal history category of IV. This offense-level calculation was based, in part, on a determination in the PSR that the conspiracy involved the manufacture of between 35 to 50 grams of methamphetamine, yielding an offense level of 30. No

specific offense characteristics applied,[1] and Santaw was accorded the three-level reduction in the offense-level calculation for his manifestation of acceptance of responsibility pursuant to USSG §3E1.1, yielding a final offense level of 27.

Prior to sentencing, Attorney Bothfeld filed a Sentencing Memorandum in which he urged the Court to depart from the sentencing guideline range of 100 to125 months, or alternatively, to impose a non-guideline sentence consistent with the factors set forth in 18 U.S.C. § 3553(a).  (Doc. 189.)  Bothfeld argued that Santaw's post-offense rehabilitation and extraordinary family circumstances warranted a downward departure from the Guidelines.  In the Sentencing Memorandum, relying on the same arguments he advanced in connection with his request for a downward departure, Bothfeld contended that a sentence of 60 months was appropriate in light of the statutory sentencing factors set forth at 18 U.S.C. § 3553(a).  (*Id.* at 4.)  Thus, the Sentencing Memorandum sought a downward departure or an adjusted sentence of 60 months, the mandatory minimum term of imprisonment required by Santaw's plea.  (*Id.*)

A sentencing hearing was held on November 5, 2012.  (Doc. 279.)  Attorney Bothfeld and Santaw each stated that they had read and reviewed the PSR and found no factual errors.  They further stated that there were no objections to the PSR's conclusion that Santaw faced a sentencing guideline range of 100 to 125 months.  Judge Sessions noted that Attorney Bothfeld had filed a motion for a downward departure based on a

---

[1] Attorney Bothfeld has submitted an Affidavit explaining that a draft PSR accorded Santaw a two-level increase in the offense-level calculation for the specific offense characteristic found in USSG §2D1.1(b)(2) for employing "a credible threat to use violence" during the conspiracy.  (*See* Doc. 286-1.)  Bothfeld explained, however, that he was able to persuade the probation officer and the government that the evidence did not support application of this enhancement, and the final PSR did not include the enhancement.  (*Id.*)

5

claim of extraordinary family circumstances and post-offense rehabilitation.  Prior to hearing allocution of counsel, Judge Sessions heard statements from Santaw's brother, Raymond Santaw, and Amanda White, the mother of Santaw's children.  Both attested to Santaw's attributes as a caring parent.  (*Id.* at 4–6.)

During the hearing, Attorney Bothfeld argued vigorously on behalf of Santaw, seeking a sentence that was either a departure from the applicable sentencing guideline range or a non-guideline sentence.  Bothfeld contended that Santaw's addiction to methamphetamine became all-consuming and that his participation in the conspiracy was driven by Santaw's addiction, and not his desire to profit from the conspiracy.  Highlighting Santaw's extensive post-arrest statement to investigators as evidence of Santaw's efforts to bring about positive change, Bothfeld argued that Santaw's arrest was a turning point which caused a significant and positive life transformation in his client.  Bothfeld highlighted Santaw's participation in an in-house drug counseling program while incarcerated as further evidence of Santaw's commitment to rehabilitation and desire for change.  Finally, Bothfeld noted Santaw's vocational skills as a mechanic, his strong family support, and his continued willingness to participate in drug treatment, arguing that these factors served as additional support for a departure from the applicable sentencing guideline range or a non-guideline sentence.  (*Id.* at 12–14.)  The government opposed the variation or departure sought by Santaw.

Judge Sessions concluded that a departure or variance from the sentencing guideline range was, in fact, warranted.  Acknowledging the seriousness of the conspiracy, including the devastating effect that methamphetamine abuse can have on a

6

small rural community like Island Pond, Judge Sessions nonetheless elected to impose a non-guideline sentence, or alternatively, to depart three levels, to a sentencing range of 77 to 96 months.  Endorsing the arguments advanced by Attorney Bothfeld as factors that warranted a sentence less than that called for by the advisory Guidelines, Judge Sessions imposed a sentence of 78 months, to be followed by a four-year term of supervised release.  (Doc. 279 at 36.)  The factors included Santaw's full statement to authorities at the time of his arrest, his involvement in treatment while awaiting trial, his positive work history, and the fact that Santaw's participation in the conspiracy was driven more by his addiction than a desire for profit.  (Doc. 279 at 32–34.)

Although he was advised of his appellate rights at the conclusion of the sentencing proceeding, Santaw pursued no direct appeal of his sentence.

## ANALYSIS

I. **Section 2255 Motions**

   A. **Standards Governing Ineffective-Assistance-of-Counsel Claims**

A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty, *see, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see generally Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012), and sentencing, *see, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).  The attorney has an "overarching duty to advocate the defendant's cause." *Strickland v. Washington*, 466 U.S. 668, 688 (1984)

In order to succeed on a claim of ineffective assistance of counsel, a claimant must meet the two-pronged test established by *Strickland*:

> (1) he "must show that counsel's performance was deficient," 466 U.S. at 687, 104 S.Ct. 2052, so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052; and (2) he must show "that the deficient performance prejudiced the defense," *id.* at 687, 104 S.Ct. 2052, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052.

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011). "The IAC claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Id.* at 85; *see, e.g.*, *Strickland*, 466 U.S. at 687, 697.

Santaw's burden here is a heavy one because, at the first step of the *Strickland* analysis, the performance prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 689), viewing the circumstances counsel faced "at the time of the relevant conduct" and evaluating that conduct "from counsel's point of view," *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (internal quotation marks and citations omitted). The determinative question is not whether counsel "deviated from best practices or most common custom," but whether his "representation amounted to incompetence under prevailing professional norms." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). As the Supreme Court stated in *Strickland*, "strategic choices made after thorough

8

investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

At the second step of the *Strickland* analysis, the prejudice prong, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Surmounting this "high bar" is "never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). In order to satisfy the prejudice prong with respect to a claim focusing on a plea of guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence. *See generally Lafler v. Cooper*, 132 S.Ct. 1376, 1387 (2012); *Glover v. United States*, 531 U.S. 198, 203 (2001).

   **B.   Waiver**

Preliminarily, the government argues that Santaw cannot challenge Attorney Bothfeld's performance on matters occurring prior to his guilty plea, accurately stating that a defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the guilty plea. *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996). To raise a claim despite a guilty plea, the petitioner must show that his or her plea was not knowing and voluntary because the advice he or she received was not within acceptable standards. *Parisi*, 529 F.3d at 138.

The government argues that Santaw has not connected the purported ineffectiveness occurring prior to his guilty plea to the knowing and voluntary nature of his decision to enter a plea of guilty. (Doc. 286 at 8.)

Although the government's argument has some merit, a court has an obligation to construe a *pro se* litigant's arguments broadly to determine if he or she has raised a colorable claim. Santaw asserts in his § 2255 motion that he was "led to believe that [his] only choice was to plead [guilty]" and that he "felt cornered and bullied into [the guilty plea]" by the government and Attorney Bothfeld. (Doc. 275 at 5.) Given these allegations, and construing his claims broadly, I find that Santaw has sufficiently connected his claim of ineffectiveness occurring prior to his plea to his ultimate decision to plead guilty. Accordingly, Santaw's claims regarding Bothfeld's representation of him prior to his plea of guilty are not waived, and the Court should consider the claims on their merit.

### C. Santaw's Ineffective-Assistance-of-Counsel Claims

Santaw asserts the following arguments in support of his claim that he was denied effective assistance of counsel: (1) Bothfeld failed to seek suppression of his post-arrest statement; (2) Bothfeld failed to properly advise him in connection with his plea of guilty;[2] (3) Bothfeld failed to "vehemently" seek a favorable sentence; (4) Bothfeld failed to investigate the case or prepare a defensive strategy; and (5) Bothfeld failed to keep Santaw "up[]to[]date with [his] co[]defendants' proceedings, even though [he] repeatedly

---

[2] Specifically, Santaw asserts that he was "unaware of all [his] choices and the ramifications of those choices when agreeing to plead," and that he was led to believe that his only choice was to plead guilty and that if he proceeded to trial he faced consecutive sentences. (Doc. 275 at 5.)

10

requested to know what [his] co[]defendants were doing." (Doc. 275 at 4.) The government answers by contending that Santaw has failed to meet *Strickland's* two-pronged test of a deficient performance and resulting prejudice. In support of this contention, the government has submitted the Affidavit of Attorney Bothfeld in response to Santaw's contentions. (Doc. 186-1.)

### 1. Failure to Seek Suppression of Post-Arrest Statement

Santaw first argues that Attorney Bothfeld was ineffective because he failed to file a motion to suppress Santaw's post-arrest statement to investigators. He now asserts that he was "highly intoxicated" and "had gone without sleep for several days" at the time he gave his statement. (Doc. 275 at 4.) As explained below, the argument fails because Santaw fails to show such a motion to suppress would have had any merit.

Defense counsel "is not required automatically to file a suppression motion in every case involving evidence or statements obtained after a search; rather, counsel must use 'professional discretion in deciding whether there are sufficient grounds' for such a motion." *United States v. Aulet*, 618 F.2d 182, 187–88 (2d Cir. 1980) (quoting *LiPuma v. Comm'r, Dep't of Corr.*, 560 F.2d 84, 93 (2d Cir.), *cert. denied*, 434 U.S. 861 (1977)). It has been pointed out that a contrary rule might cause defense attorneys to file a suppression motion no matter how tenuous the grounds supporting it simply for counsel's own protection. *See LiPuma*, 560 F.2d at 93. Thus, to prevail on a claim of ineffective assistance of counsel for failure to bring a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed. *United States v.*

11

*Matos*, 905 F.2d 30, 32 (2d Cir. 1990); *United States v. Cruz*, 785 F.2d 399, 405–06 (2d Cir. 1986).  In addition defendant must show that counsel's decision not to bring the motion was unreasonable under prevailing professional norms.  *Matos*, 905 F.2d at 32.

Santaw makes no showing that a suppression motion would have been successful. A defendant's degree of intoxication or exhaustion is only relevant if there was some element of police coercion present, and evidence of a defendant's intoxication does not preclude a finding of a knowing and intelligent waiver.  *See, e.g.*, *United States v. Brooks*, 125 F.3d 484, 491 (7th Cir. 1997) (statement voluntary despite claim that defendant was experiencing effects of crack cocaine, sleep deprivation, and a hand injury); *Avincola v. Stinson*, 60 F. Supp. 2d 133, 160 (S.D.N.Y. 1999) (valid waiver despite physical manifestations of drug use by defendant at time *Miranda* warnings given); *United States v. DiLorenzo*, No. S1 94 Cr. 303 (AGS), 1995 WL 366377, at *8 (S.D.N.Y. June 19, 1995) (defendant knowingly and intelligently waived *Miranda* rights despite claim that he was under the influence of alcohol).  The issue of intoxication is relevant to the inquiry "only to the extent that it would make the petitioner more susceptible to mentally coercive police tactics."  *Graves v. United States*, 878 F. Supp. 409, 414 (N.D.N.Y. 1995) (internal quotation marks omitted).  As the Sixth Circuit explained: "Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary."  *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989).

In *United States v. Taylor*, Nos. 11-2201 (L), 11-2426 (CON), 11-2639 (CON), 2014 WL 814861 (2d Cir. Mar. 4, 2014) the Second Circuit granted a new trial where a post-arrest confession was found to be involuntary due to the defendant's drug induced intoxication.  In *Taylor*, the defendant consumed Xanax immediately prior to his arrest and was "nodding off" during his post arrest interview.  After Taylor fell asleep two or three times, the officers had to "refocus" Taylor as he was observed to be "shutting down".  *Id.* at 6.  The Court of Appeals concluded that the officers' continued questioning of Taylor constituted an undue advantage, and ultimately overbore Taylor's will.  Accordingly, Taylor's statement was found to have been given involuntarily and was suppressed.

Here the situation differed markedly.  According to Attorney Bothfeld, discovery in this case revealed that prior to giving his statement, Santaw had been advised of his constitutional rights and had waived those rights in writing.  (Doc. 286-1 at 2.)  Santaw told Bothfeld that although he had been using methamphetamine in the days before and on the day of his arrest, he in fact understood the *Miranda* advisement given to him when he agreed to speak with the investigating officers.  (*Id.* at 3.)  Moreover, according to Bothfeld, Santaw did not tell him he had gone without sleep for days prior to giving his statement.  (*Id.*)  Bothfeld states that he and Santaw discussed the circumstances under which the statement was given as well as "the accuracy and detail" of the statement.  (*Id.*)  There is no evidence that Santaw was under the influence of drugs to the debilitating extent described in *Taylor* or that the investigators engaged in improper coercive tactics.  The record reveals that Bothfeld made the strategic and successful decision to use

13

Santaw's confession to buttress his sentencing argument that Santaw had turned his life around starting at the time of his arrest. This strategic decision was not objectively deficient, and Santaw's claim fails the performance prong of the *Strickland* test.

Santaw's claim also fails the prejudice prong of *Strickland*. Santaw does not claim that he would not have pled guilty; he contends only that the statement led to an "increased term of incarceration." (Doc. 275 at 4.) There is nothing to suggest that the post-arrest statement led to an increased sentence. In fact, it was the center of Bothfeld's successful argument that Santaw accepted responsibility for his offense and a departure or sentencing variance was warranted. Furthermore, the evidence against Santaw included far more than just his confession. It included extensive pharmacy records, coconspirator statements and tangible evidence of the conspiracy. In light of this evidence Santaw accepted the government's plea offer and its clear benefits

### 2. Failure to Seek a Favorable Sentence

Santaw next claims that Attorney Bothfeld "failed to vehemently seek a favorable sentence." (Doc. 275 at 4.) This statement is clearly contrary to the record. Not only did Bothfeld seek a favorable sentence in the form of a departure from the sentence called for in the Guidelines, he succeeded in that effort.[3] Bothfeld was successful in persuading Judge Sessions to impose a sentence that was 28 months less than that recommended in the Guidelines. This claim fails the performance and prejudice prongs of *Strickland*.

---

[3] Even prior to sentencing, Bothfeld was successful in mitigation efforts. During the informal resolution process, Bothfeld persuaded the probation officer and the government that an enhancement for a credible threat of violence should be stricken from the draft PSR. (Doc. 286-1.)

### 3. Failure to Prepare a Defensive Strategy

Santaw asserts that Bothfeld "did not prepare any sort of defensive strategy." (*Id.*) Santaw fails to identify what sort of defensive strategy Bothfeld should have pursued. A § 2255 motion "must contain assertions of fact that a petitioner is in a position to establish by competent evidence," and "[a]iry generalities, conclusory assertions[,] and hearsay statements will not suffice." *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (internal quotation marks omitted); *accord Guzman v. United States*, No. 11 Civ. 2433, 2011 WL 6097128, at *2 (S.D.N.Y. Dec. 7, 2011). By failing to identify what defense Bothfeld should have pursued, Santaw fails to meet both the performance and prejudice prong of Strickland. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (noting that, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial"); *Lopez v. Artus*, No. 03 Civ. 7087(RJH), 2005 WL 957341, at *10 (S.D.N.Y. Apr. 25, 2005). Here, as explained in Bothfeld's affidavit, the case against Santaw was overwhelming. Santaw instructed Bothfeld that he did not wish to proceed to trial and that Bothfeld was to pursue the most favorable plea agreement he could secure. (Doc. 286-1 at 8.) In Bothfeld's opinion, the evidence was quite strong. The evidence consisted of not only his confession, but also pharmacy records reflecting his multiple purchases of pseudoephedrine, as well as statements of his codefendants. In short, there was no meritorious defensive strategy for Bothfeld to pursue, other than sentence mitigation.

15

### 4.  Failure to Inform of All Possible Outcomes

Santaw next asserts that Bothfeld "failed to inform me of all possible outcomes and choices I had [regarding] this case," and that if he proceeded to trial and lost, his sentences "would be made to run consecutive." (Doc. 275 at 4, 5.) But Santaw's sworn allocution at his change of plea hearing reveals otherwise. The transcript of that hearing reveals the following colloquy between Judge Sessions and Santaw:

> THE COURT:  Have you had an adequate opportunity to go over Count II with Mr. Bothfeld?
> [SANTAW]:  Yes, Your Honor.
> THE COURT:  Are you satisfied with the representation he has provided?
> [SANTAW]:  Yes, sir.
> THE COURT:  Has he explained to you the nature of the elements of Count II together with any defenses that you may have?
> [SANTAW]:  Yes, sir.

(Doc. 278 at 6.) Santaw also acknowledged under oath that he had reviewed the written Plea Agreement with Attorney Bothfeld prior to signing it. (*Id*. at 10.) Santaw further confirmed that he had reviewed the Guidelines with Bothfeld prior to the hearing. (*Id.* at 12.) When the prosecutor provided a factual basis for the plea of guilty, Santaw responded that the recitation was accurate. (*Id*. at 16.) Statements like these, made by a defendant during his or her plea allocution, carry "'a strong presumption of accuracy.'" *Espinal v. United States*, No. 08 Civ. 7029(TPG), 2011 WL 5120663, at *3 (S.D.N.Y. Oct. 8, 2011) (quoting *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001)).

In his affidavit, Attorney Bothfeld disputes Santaw's assertion that he was told that he faced a consecutive sentence if he proceeded to trial and lost. Perhaps most tellingly, Santaw points to no objective evidence that he would have insisted on going to

16

trial but for Bothfeld's purported errors.  Santaw's contention that he pled guilty only because Bothfeld purportedly failed to inform him of his options, may be broadly construed as a challenge to the knowing and voluntary nature of his plea.  But this claim is without merit.  Rule 11 of the Federal Rules of Criminal Procedure is designed to ensure that a defendant's guilty plea is "a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *United States v. Renaud*, 999 F.2d 622, 624 (2d Cir. 1993) (internal quotation marks omitted).  The rule sets forth several requirements for plea allocution and requires that, before accepting a guilty plea, the court "must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."  Fed. R. Crim. P. 11(b)(2).  Here, the transcript of the change of plea hearing reveals that Judge Sessions complied carefully with the requirements of Rule 11, and concluded as follows:

> The Court having questioned Mr. Santaw and counsel on the offer of his plea, the Defendant and counselor having advised the Court that he has deferred [sic][4] concerning the offer of the plea[,] and all aspects of the charges against the Defendant, [and] any defenses he may have, [the] Court having observed the Defendant making his answers, his demeanor in answering questions, his apparent intelligence and his attitude, the Court having observed [that] the Defendant does not appear to be under the influence of any medication, drug, or a substance which may affect his judgment, the Court hereby finds the offer of the plea of guilty has a factual basis, is free of any course of influence of any kind[,] competently and voluntarily made, the full knowledge of the charges against him and consequences of his plea, there have been no promises of any kind made to him by anyone or statements set forth in the plea agreement, and no threats

---

[4] Given the context, I assume the word "deferred" is a transcription error and that the Court found that the defendant had "conferred" with his lawyer, and not "deferred."

17

    or coer[c]ion have been exerted upon him in any manner, the Court hereby
    accepts the guilty plea.

(Doc. 278 at 17–18.)  Given these findings, any assertion that Santaw's plea was not made knowingly or voluntarily must fail.

### 5. Failure to Apprise of Codefendant Cases

Finally, Santaw claims that Bothfeld failed to keep him "up[]to[]date" regarding his codefendants' proceedings.  (Doc. 275 at 4.)  This claim fails both the performance and prejudice prongs of the *Strickland* test.  The Court is unaware of any authority stating that a lawyer's performance is objectively deficient when he or she fails to keep his or her client apprised of proceedings involving codefendants.  Moreover, Santaw fails to show that he sustained any prejudice from Bothfeld's purported failure to report these proceedings.  Santaw was the first of several codefendants to plead guilty, and thus there would have been little for Bothfeld to report to Santaw prior to entering his plea.  Further, any actions or statements made by Santaw's codefendants occurring after Santaw's plea simply had no effect on Santaw.

## II. Motion for Appointment of Counsel

Santaw has also moved for the appointment of counsel, arguing that his claims are "somewhat complex and . . . tedious, and require professional training in order to navigate the law involved."  (Doc. 276 at 1.)

There is no constitutional right to appointed counsel when a person convicted of a crime brings a "collateral attack" upon his conviction or sentence.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Thus, as in any civil case, the decision to assign

counsel lies clearly within the court's discretion.  *In re Martin-Trigona*, 737 F.2d 1254, 1260–61 (2d Cir. 1984).  Assuming the movant has shown that he is sufficiently indigent, the factors to be considered include the following: (1) whether the indigent's position seems likely to be of substance; (2) whether the indigent is able to investigate the crucial facts concerning his claim and present his case; (3) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact-finder; (4) whether the legal issues involved are complex; and (5) whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.  *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (citing *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986)); *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).

Here, as explained above, Santaw's claims lack merit.  Moreover, Santaw advances no special reason to support the appointment of counsel, and this matter does not involve complicated issues.  Finally, I find that the "interests of justice" do not require that counsel be appointed in this case.  18 U.S.C. § 3006A(a)(2)(B).  Accordingly, Santaw's Motion to Appoint Counsel is DENIED.

## Conclusion

In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see, e.g.*, *Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims).  However, the filing of a motion pursuant to § 2255 does

not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see, e.g.*, *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. *See, e.g.*, *Machibroda*, 368 U.S. at 494; *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987). Santaw has failed to show specific facts that if proved at a hearing would warrant the granting of his motion. Accordingly, no hearing is required. Based on the foregoing, I recommend that Santaw's § 2255 motion to correct, vacate, or set aside his conviction and sentence (Doc. 275) be DENIED.

Dated at Burlington, in the District of Vermont, this 29th day of April, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).